# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

ROGER ERVIN                 *

Plaintiff                   *

v                           *        Civil Action No. ELH-16-3978

FRANK BISHOP                *

Defendant                   *

                          ***

## MEMORANDUM OPINION

This civil rights complaint was filed by self-represented plaintiff Roger Ervin against Warden Frank Bishop on December 13, 2016, pursuant to 42 U.S.C. §1983. ECF 1. Multiple exhibits are attached to the suit. *See* ECF 1-1.

The complaint concerns Ervin's claim that legal mail entrusted to a correctional officer to be mailed to this court was not mailed for improper reasons. In later submissions, Ervin raises claims concerning his medical care. *See* ECF 32; ECF 34.

The complaint was filed after Ervin filed Civil Action ELH-16-3946, which concerns claims identical to those raised in Ervin's initial complaint and in Ervin's subsequent motions for injunctive relief. *See Ervin v. Wexford, et al.*, Civil Action ELH-16-3964 (D. Md) at ECF 5.

In response to the complaint, Warden Bishop filed a motion to dismiss asserting, in part, a defense of claim-splitting. ECF 17 (motion); ECF 18 (memorandum of law) (collectively, "Motion"). Ervin was advised of his right to respond to the Motion and the time to do so. ECF 19. In addition, he was advised of the potential consequences of a failure to respond. *Id.* Ervin did not properly oppose the Motion. Rather, he filed a motion for default judgment (ECF 20),

which was denied (ECF 25), and sought extensions of time as well as emergency injunctive relief. ECF 23; ECF 26; ECF 29; ECF 30; ECF 32; ECF 34; ECF 35.

Defendant was directed to respond to Ervin's motion for injunctive relief (ECF 33), and the response was received (ECF 36), with exhibits. Ervin has replied. ECF 37.

Currently pending are defendant's Motion (ECF 17) and Ervin's motions for emergency orders. ECF 32; ECF 34. For the reasons that follow, defendant's Motion shall be granted and Ervin's motions shall be denied.

### I. Complaint Allegations[1]

Plaintiff, at all times relevant, has been incarcerated at North Branch Correctional Institution ("NBCI"). He states that in May of 2016, he gave Correctional Officer Kuhn his legal mail, contained in a large yellow envelope with a green money voucher attached. ECF 1 at 3. The money voucher was filled out so that postage could be paid. *Id*. Kuhn brought Ervin's mail back to him, stating that Officer A. Conner said she was not going to send it out; Kuhn did not know why Conner took that position. *Id*. at 4.

Ervin states that when his housing tier was called out for the lunch meal he explained to Sgt. Thomas, who was in charge of the housing unit, that Conner would not send his legal mail out. ECF 1 at 4. He claims Thomas instructed him to give the legal mail back to Kuhn and to tell Kuhn to put it on Thomas's desk. *Id*. Ervin claims that he followed those instructions, but that Kuhn came back to him at around 2:10 p.m., stating: "I told you she (Conner) said she was not going to mail this mail out." *Id*. Kuhn returned the mail to Ervin. *Id*.

---

[1] As indicated, *infra*, many of the allegations in this case duplicate the factual allegations in ELH-16-3964. They are recounted in this Court's Memorandum Opinion of February 1, 2018. *See id.*, ECF 68 (Memorandum Opinion). Therefore, to the extent relevant, I shall incorporate here, by reference, the allegations and factual summary as set forth in ECF 68 of case ELH-16-3964.

Ervin alleges that he filed a complaint under the administrative remedy procedure ("ARP"), complaining that Conner did not have the authority to decide whether the mail should go out because she was not the tier officer, nor was she the building sergeant. ECF 1 at 4. The Assistant Warden answered Ervin's ARP, stating that Conner did not do what Ervin claimed and denying his request for $150 in damages because he failed to prove he incurred such a loss. *Id*.

Thereafter, Ervin filed a request under Maryland's Public Information Act to find out who was interviewed when Lt. Sawyer investigated his ARP. *Id*. Ervin discovered that Sawyer claimed he spoke with Ervin and that he could not prove it cost him $150 for the failure to send out his legal mail. However, Ervin claims that Sawyer neither spoke to his witnesses, nor did he interview Ervin. Ervin adds that Sgt. G. Forney "came around and said he don't know why she did that" and wondered why Sgt. Thomas did not send the legal mail out himself. *Id*. Forney then asked if Ervin still had the mail and when he confirmed that he did, Forney offered to get the court costs reimbursed to Ervin. *Id*. Ervin claims he told Forney that the Commissioner had already said Ervin had not proved "she owe me court cost." *Id*. It is unclear when this alleged conversation with Forney took place or in what context. *Id*.

After Ervin learned that Forney and Sawyer lied "in their MPI-A report," he filed another ARP. *Id*. This ARP apparently concerned the lack of library privileges for Ervin's housing unit from June 1, 2016 through June 27, 2016. *Id*. On June 28, 2016, the day after Ervin filed his ARP, Ervin's housing area was allowed to attend the library and he was asked to withdraw his ARP. Ervin refused to do so. *Id*.

Ervin claims that because he refused to sign off on the ARP, Sawyer enlisted Officer Keel to write up Ervin, claiming he "was doing inappropriate things [during] the month of

Ramadan." *Id*. Ervin denies the allegation in Keel's report.[2] Further, he claims that although he was locked up for the reported misconduct, the male correctional officer told him that Officer Keel should have just turned her head if Ervin was masturbating in his cell. ECF 1 at 5. In addition, Ervin explains away his guilty plea to the charges, claiming the hearing officer told him that because Ervin is "too old" to be in lock-up and has medical issues, he should take the time served in segregation and move on. *Id*. Ervin claims the hearing officer also indicated that the Warden would remove the charge from Ervin's record at a later time. *Id*.

On August 18, 2016, Ervin was sent to Mercy Hospital "to set up for surgery." ECF 1 at 5. When he returned to NBCI he was placed on lock-up for refusing housing. Ervin claims that the same hearing officer who handled the charge against him from Keel also handled this charge and declined to find him guilty because "you have papers that say you are to be kept in a single cell until surgery." *Id*. Ervin claims that Sawyer and Forney said they did not care about papers that Ervin had concerning his cell assignment and were assigning him to a double cell. *Id*. According to Ervin, Forney and Sawyer violated his "shower order" and the order for his assignment to a single cell. *Id*.

Ervin then turns to matters for which he filed ARPs, and the complaints were found meritorious in part. ECF 1 at p. 5. He claims he filed an ARP about the absence of library privileges or religious services; "the property"[3] being destroyed; not being fed for seven days by the dietary officers; and being denied religious services in 2014. *Id*. at 5 – 6. Ervin indicates that he was told that although his grievances were meritorious in part, he would need to "go to court"

---

[2] Ervin received a Notice of Infraction for masturbating in front of Officer Keel. *See* Civil Action ELH-16-3964 at ECF 34-4 at 3 (Notice of Infraction). The Court may take judicial notice of matters of public record. *See*, *e.g.*, *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015).

[3] This appears to refer to a claim Ervin had regarding the loss or destruction of nail clippers. *See* ECF 1 at 6.

4

to get relief and that is why he filed the instant complaint. *Id*. at 6. He states he wants a "judgment against . . . Conner along with Sgt. G. Forney and Lt. T. Sawyer along with CO S. Keel & for them to pay all court cost along with $150.000 dollars because the Judge closed the case once I didn't respond . . . ." *Id*.

Ervin adds that he has provided the court with a list of names of 25 inmates whose "First Amendment rights were violated as well as mine." ECF 1 at 6. He states that he wants an attorney, $5000 in damages for each of the 25 persons listed, and a jury trial. *Id*. Ervin claims that NBCI is "requiring that we give our legal mail to CO A. Conner" and asks that an enclosed exhibit be reviewed in that regard. *Id*.

Ervin concludes the complaint with his allegation that his prior case, Civil Action ELH-15-2263, was dismissed because he did not respond by August 1, 2016. ECF 1 at 6. He expounds upon the claim that was raised in that case and claims he did not receive this court's decision until August 23, 2016. *Id.* [4]

After defendant moved to dismiss (ECF 17; ECF 18), Ervin filed emergency motions for a temporary restraining order (ECF 32; ECF 34; ECF 35), asserting that on June 21, 2017, he had received cataract removal surgery and a tube placed in his eye to control pressure from glaucoma. ECF 32 at 1. He claimed he was given a bottle of eye drops after his surgery and was told he should be held at Jessup Correctional Institution ("JCI") until the following day so that he could be seen by an optometrist, Dr. Goodman. *Id*. Someone, presumably Dr. Goodman, cleared Ervin to be released back to WCI on June 22, 2017. *Id*.

When Ervin arrived at WCI he asked Dr. Robustiano Barrerra where the instructions were for taking the eye drops he was given. ECF 32 at 1 – 2. Although Dr. Barrerra allegedly

---

[4] Ervin did not appeal this court's decision. *See Ervin v. Ottey, et al*., Civil Action ELH-15-2263 (D. Md.)

5

told Ervin that he would obtain instructions for the eye drops before he left the ward, Ervin claims he did not receive them in the six days he was there and he was sent back to NBCI without them. *Id*. at 2.

Further, Ervin claims that "all [his] medication was stopped because the defendants said [he] was complaining about the treatment [he] was receiving." *Id*. He states Dr. Goodman saw him on August 23, 2017, and he informed Ervin that his left eye was "rejecting the tube" and was infected. *Id*. Goodman told Ervin he would order antibiotics and call Dr. Summerfield, the physician who performed the surgery. *Id*. Ervin claims he was told he would need a second surgery, but that "we have a few weeks." *Id*. He also alleges that the doctor told him that aftercare is more important than the surgery in most cases. However, according to Ervin, there was no aftercare in his case. *Id*.

The relief Ervin seeks in the Motion is an order requiring his transfer to JCI, so that he can be held there until the surgery and this court "investigate[s] this matter," and return of all medications prescribed. ECF 32 at 3. According to Ervin, if this court does not do anything he "will lose [his] sight and might die." *Id*. He claims he will not consent to a second surgery to correct the issue with his left eye until this court orders his transfer to JCI. *Id*.

In a subsequent motion Ervin claims he was seen by Dr. Ashraf on August 30, 2017, who told him that Ervin's prescription for Tramadol was stopped by Dr. Ava Joubert. ECF 34 at 1 – 2. Further, Ervin claims that Ashraf told him he did not know about the rejection of the tube from Ervin's left eye, and he advised Ervin to write to Joubert and explain that the Tramadol was prescribed by a neurologist for migraines. *Id*. at 2. Ervin seeks a transfer from NBCI; the removal from administrative segregation of another inmate who has been helping him; and an order requiring medical staff (not named as defendants in this case) to reinstate all medications.

6

*Id*. at 4. This motion was supplemented with medical records and similar allegations that Ervin is not receiving proper medical care, including for his eye post-surgically. ECF 35.

## II. Defendant's Response

As noted, Warden Bishop moved to dismiss the complaint, claiming it represents an attempt by Ervin to "claim split" and because there is no allegation that Bishop was personally involved in any of the conduct claimed in the complaint. ECF 16 (motion); ECF 17 (memorandum in support). This court directed the defendant to show cause why injunctive relief should not be granted in favor or Ervin and Bishop filed a response. ECF 36. Injunctive relief shall be denied, for the reasons stated by the Warden in ECF 36, and for the reasons stated in ECF 68 in case ELH-16-3964.

## III. Standard Of Review

In reviewing the complaint in light of a motion to dismiss pursuant to Fed. R. Civ. Proc. 12(b)(6) the court accepts all well-pleaded allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *Ibarra v. United States,* 120 F.3d 472, 473 (4th Cir. 1997). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) (stating that a complaint need only satisfy the "simplified pleading standard" of Rule 8(a)).

The Supreme Court of the United States has explained that a "plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions,

and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Nonetheless, the complaint does not need "detailed factual allegations" to survive a motion to dismiss. *Id*. at 555. Instead, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id*. at 563. To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

To be sure, the submissions of a pro se litigant must be construed liberally. *See Carter v. Fleming*, 879 F.3d, 32, 137 (4th Cir. 2018); *Smith v. Smith*, 589 F.3d 736, 738 (4th Cir. 2009). Nevertheless,"where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

"[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563 (citing *Sanjuan v. Am. Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d, 247, 251 (7th Cir. 1994)) (once a claim for relief has been stated, a plaintiff 'receives the benefit of imagination, so long as the hypotheses are consistent with the complaint').

## IV. Discussion

### A. Claim Splitting

Litigants are generally not permitted to pursue the same claim in two simultaneously filed cases. "The rule against claim splitting 'prohibits a plaintiff from prosecuting its case piecemeal and requires that all claims arising out of a single wrong be presented in one action.'" *Lee v. Norfolk S. Ry. Co.*, 802 F.3d 626, 635 (4th Cir. 2015) (quoting *Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.,* 273 F. Appx. 256, 265 (4th Cir. 2008)). "In a claim splitting case, as with the traditional res judicata analysis, the second suit will be barred if the claim involves the same parties or their privies and 'arises out of the same transaction or series of transactions' as the first claim." *Sensormatic*, 452 F. Supp.2d 621, 626 (D. Md. 2006), *aff'd,* 273 F.App'x 256 (4th Cir. 2008) (citing *Trustmark Insur. Co. v. ESLU, Inc.,* 299 F.3d 1265, 1269–70 (11th Cir. 2002)). "[W]hen a suit is pending in federal court, a plaintiff has no right to assert another action 'on the same subject in the same court, against the same defendant at the same time.'" *Sensormatic*, 452 F. Supp.2d at 626 (quoting *Curtis v. Citibank, N.A.,* 226 F.3d 133, 138–39 (2nd Cir. 2000)).

"This defense against claim-splitting, however, can be relinquished by a defendant either explicitly or implicitly." *Lee v. Norfolk S. Ry. Co.*, 187 F. Supp. 3d 623, 629 (W.D.N.C.), *aff'd,* 670 F. App'x 777 (4th Cir. 2016) (ultimately holding Defendants had waived the claim-splitting defense). "The Fourth Circuit has specifically prohibited a 'wait and see' strategy." *Lee*, 187 F. Supp. 3d at 630 (citing *Lee v. Norfolk S. Ry. Co.*, 802 F.3d 626, 636 (4th Cir. 2015)) (party with knowledge of split claim litigation must promptly raise the issue "while both proceedings are pending"). Defendant in this case has not waived the defense as it was raised in the initial response to the complaint.

Before filing the instant complaint Ervin filed a complaint raising an access to courts claim concerning Conner's alleged interference with outgoing legal mail; the claim as to Forney and Sawyer's investigation into Ervin's ARP; a retaliation claim against Forney and Sawyer; a retaliation claim against Officer Keel for the disciplinary infraction she wrote; and claims regarding his medical care. *See Ervin v. Wexford, et al.*, Civil Action No. ELH-16-3964, ECF 5. Ervin also filed in that case multiple motions for injunctive relief seeking a transfer to JCI, reinstatement of his discontinued medications, and release of another inmate from administrative segregation. *Id*. at ECF 64; ECF 65. Both medical staff defendants and correctional defendants responded to the substance of all of the claims raised by Ervin in Civil Action ELH-16-3964. *Id*. at ECF 25; ECF 34. The rule against claim-splitting applies to Ervin's claims in this complaint and defendant is entitled to dismissal of the complaint.

B. *Respondeat Superior*

To the extent that Ervin's prior case did not name Warden Bishop as a defendant, the claim against him in this case is without merit. There are no specific allegations against Warden Bishop in the complaint. A claim against Bishop based solely on his position as Warden is one relying on the doctrine of *respondeat superior*, which does not apply in claims raised under 42 U.S.C. §1983.

It is well established that the doctrine of respondeat superior does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983); *see also Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (no respondeat superior liability in a Bivens suit).

Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit

authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). To state a claim of supervisory liability under § 1983, the plaintiff must allege: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). There are no allegations raised against Bishop that would indicate he could be liable as a supervisory official for the actions alleged. The complaint is thus subject to dismissal on this ground as well.

## V. Conclusion

By separate Order which follows, defendant's motion to dismiss shall be granted and plaintiff's motions for temporary restraining order shall be denied.

February 2, 2018  /s/
Date  Ellen L. Hollander
  United States District Judge